IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AYLSSA HERNANDEZ, | § | |
| *Plaintiff,* | § § § | SA-24-CV-01355-ESC |
| vs. | § § | |
| SAFARILAND, LLC, | § § § | |
| *Defendant.* | § § § | |

## ORDER

Before the Court in the above-styled cause of action is Defendant Safariland, LLC's Motion to Dismiss Plaintiff's First Amended Complaint [#6]. This case was reassigned to the undersigned's docket after both parties consented to the jurisdiction of a United States Magistrate Judge on December 9, 2025 [#13]. The undersigned therefore has authority to issue an order on Defendant's motion to dismiss pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court will grant in part and deny in part the motion.

## I. Background

This is a products-liability action arising out of the accidental discharge of a firearm carried by Officer Aylssa Hernandez while working for the San Antonio Police Department ("SAPD"). Hernandez claims she was injured when the keys on her duty belt became wedged between the holster and the weapon's trigger, causing her weapon to inadvertently discharge and ultimately leading to the amputation of her right index finger. Hernandez originally filed this case in state court against Defendant Safariland, LLC, the manufacturer of the retention holster she was using at the time of the incident. Safariland removed Hernandez's Petition to this Court on the basis of diversity jurisdiction, and promptly moved to dismiss Hernandez's claims under

1

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In response, Hernandez sought leave to file an amended pleading, and the Court granted the motion.  Hernandez's First Amended Complaint is the current live pleading.

According to Hernandez's First Amended Complaint, Safariland and SAPD entered into a contract for Safariland to sell SAPD the Safariland 6360RDS Duty Rated Level III Retention Holster for use by SAPD officers, and this was the holster Hernandez was using at the time of the incident.  (Am. Compl. [#4], at ¶ 3.01.)  Hernandez alleges that the holster is defective in its design, manufacturing, and marketing and that Safariland made affirmative misrepresentations to Bexar County and SAPD that the holster was safe for use by the general public and law enforcement.  (*Id.* at ¶ 4.01.)  More specifically, Hernandez alleges that there is an opening around the area of the trigger guard of the holster, which can allow objects to unintentionally become lodged inside the holster, leading to the accidental discharge of the weapon being stored in the holster.  (*Id.*)  Hernandez asserts the following causes of action against Safariland: (1) strict liability and negligence based on a defective design; (2) strict liability and negligence based on a marketing defect; (3) claims under the Texas Deceptive Trade Practices Act ("DTPA"); and (4) gross negligence.  (*Id.* at ¶¶ 5.01–9.02.)

Safariland has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Hernandez fails to state a claim upon which relief can be granted because her allegations are conclusory and insufficiently pleaded.  Hernandez filed a response to the motion, arguing that the motion should be denied and alternatively asking for leave to file a Second Amended Complaint attempting to cure any identified defects in the pleadings.  Safariland argues the proposed Second Amended Complaint is futile and fails to cure the

pleading deficiencies identified in its motion to dismiss.  The motion to dismiss and request for leave to amend are ripe for the Court's review.

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss, a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted).  However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  *See Twombly*, 550 U.S. at 570.

The grant of leave to amend pleadings pursuant to Rule 15(a) is generally within the discretion of the trial court and shall be "freely given when justice so requires."  Fed. R. Civ. P. 15(a); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).  However,

leave to amend "is by no means automatic." *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. Unit A July 1981)).  In evaluating the propriety of an amendment, the district court may consider factors such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.  *Id.*  (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Granting leave to amend would be futile when "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).  For the purposes of the futility analysis, courts apply the same standard of legal sufficiency applicable to a motion to dismiss under Rule 12(b)(6). *Id.* (internal quotation omitted).

### III.  Analysis

Safariland seeks dismissal of all of Hernandez's claims.  For the reasons set forth herein, the Court will grant the motion in part and dismiss Hernandez's negligence claims based on a marketing defect and her claims arising under the DTPA.  The Court has reviewed the proposed amended pleading and it does not cure the deficiencies with these claims, so the request to amend is denied.  The Court will deny Safariland's motion to dismiss Hernandez's strict liability and negligence claims based on a design defect and her claim of gross negligence.

**A.      Hernandez has adequately pleaded causation.**

Safariland argues that Hernandez fails to adequately plead causation and that this pleading defect is fatal to all her claims.  Texas law governs Hernandez's DTPA and tort claims in this diversity action.  *See Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938).  To prevail on her claims, Hernandez must prove that Safariland caused her injuries.  In the context of a negligence

action, a plaintiff must plead and prove that the defendant's negligence is a proximate cause of his injury, which consists of both cause in fact and foreseeability. *Roberts v. Healey*, 991 S.W.2d 873, 878 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). For DTPA violations and products-liability claims (whether based on a manufacturing or design defect), producing cause must be shown. *Bostic v. Georgia-Pac. Corp.*, 439 S.W.3d 332, 342 (Tex. 2014); *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 160–61 (Tex. 1995). Both producing cause and proximate cause require "actual causation in fact." *Prudential Ins. Co.*, 896 S.W.2d at 161. "The test for cause in fact is whether the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred." *Roberts*, 991 S.W.2d at 878 (citing *Prudential Ins. Co.*, 896 S.W.2d at 161). Generally, causation is a fact question, "although some causes in fact do not constitute legal causation as a matter of law." *Roberts*, 991 S.W.2d at 878.

Safariland argues that Hernandez has not pleaded that the holster caused her injury—only that it furnished the condition that made her injury possible—because the holster itself did not amputate Hernandez's finger or come in contact with the trigger to cause the discharge of Hernandez's weapon. Instead, Hernandez alleges that her own keys entered the trigger guard and activated the trigger. Therefore, argues Safariland, her keys (along with the firearm itself) were the true cause(s) of her injuries.

The only case cited by Safariland in support of its argument is *City of Austin v. Howard*, No. 03-22-00439-CV, 2023 WL 1869645 (Tex. App.—Austin Feb. 10, 2023, no pet.). This case is not instructive. In *City of Austin*, a victim was murdered after a suspect escaped from an Austin Police Department officer and entered a burrito shop where the victim was working and stabbed him to death. *Id.* at *1. The facts as pleaded were that the escape of the perpetrator

occurred when the officer's duty belt fell off in the course of a scuffle because it allegedly lacked integral safety components. *Id.* at *1, *3. The Austin Court of Appeals held that the Austin Police Department could not be held liable for the death because the allegedly defective duty belt merely furnished the condition that made the death possible and the relationship between any design defect and the stabbing was too attenuated to constitute proximate cause. *Id.* at *3.

As articulated by the Restatement of Torts and the Texas Supreme Court, the ultimate question in evaluating causation is whether a reasonable person would view the defendant's conduct as a substantial cause of the harm at issue or whether the conduct is too attenuated to give rise to liability because it did nothing more than create "the condition which made the injury possible." Restatement (Second) of Torts § 431 cmt. a (1965); *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 528 (Tex. 2025), *reh'g denied* (Sept. 26, 2025); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007). Hernandez's theory of causation is that the gun holster manufactured and supplied by Safariland to SAPD is defective in its design, manufacturing, and marketing, because it has an opening large enough for items to be wedged between it and the trigger of the weapon it stores. (Am. Compl. [#4], at ¶ 4.01.) Hernandez alleges that police officer duty handguns are designed to be carried with a live round of ammunition in the firing chamber and that the holster's design defect made it foreseeable to Safariland that a foreign object such as the officer's keys could come in contact with the body of the holster and the trigger of a duty handgun. (*Id.* at ¶ 9.01.)

The Court agrees with Hernandez that she does not need to plead or prove that the holster itself amputated her finger to prevail on her claims. Hernandez has pleaded sufficient facts to support a finding that the design of the subject holster allows foreign objects to too easily enter the trigger guard area, and that such design was a substantial and not too attenuated proximate or

6

producing cause of Hernandez's injuries.  Safariland is not entitled to dismissal of Hernandez's claims based on a failure to plead causation.

**B.      Hernandez adequately pleads claims based on a design defect.**

Hernandez's First Amended Complaint seeks to hold Safariland liable for her injuries under a theory of both negligence and strict liability based on a design defect in the holster.  "To recover for a product liability claim alleging a design defect, a plaintiff must prove (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was the producing cause of the injury for which the plaintiff seeks recovery."  *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (applying Texas law).   Safariland argues Hernandez's design defect claim must be dismissed because she has not adequately pleaded "a safer alternative design existed" for the holster.

"Safer alternative design" is defined by statute as "a product design other than the one actually used that in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury . . . without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer . . . ."  *Id.* at 1042 (quoting Tex. Civ. Prac. & Rem. Code. § 82.005(b)).  Hernandez's pleading contains the following allegations regarding a safer alternative holster design: (1) a safer alternative design was available for the holster because the same product could have been designed with a cover over the trigger area; (2) the trigger cover would have prevented or significantly reduced the risk of injury without impairing the holster's utility; and (3) the cost of adding a higher cover over the trigger area was economically and technologically

feasible at the time the product left the control of Safariland.  (First Am. Compl. [#4], at ¶¶ 7.02, 9.02.)

Safariland argues these allegations are conclusory and fail to articulate how the proposed alternative design is in fact both safer and feasible.  According to Safariland, the type of holster it manufactured and sold to SAPD is a "Level III retention holster" relying on friction and two additional locking mechanisms to release the firearm from the holster, and Hernandez has not identified any Level III retention holster currently containing the alleged safer alternative design. Nor has she articulated how the proposed higher cover on the trigger area would affect the ability to draw the weapon from the holster or address how it might reduce the utility of the holster in the context of law enforcement where preventing third-party access to a weapon is paramount.

Safariland is not entitled to dismissal of Hernandez's design defect claims based on these arguments.  First, Hernandez need not identify an actual product currently in circulation in the market to plead a safer alternative design; a proposed safer alternative design need only be capable of being developed.  *Genie Indus. v. Matak*, 462 S.W.3d 1, 7 (Tex. 2015).  Additionally, this is not a case in which the pleadings fail as a matter of law to plead a safer alternative design because the plaintiff identifies an entirely different type of product than the one at issue.  *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 767 (5th Cir. 2018) (explaining that in proposing a safer alternative design a plaintiff cannot allege a substantially or entirely different product).  Safariland merely argues that Hernandez's concept of a holster with a cover over the trigger area is not in fact safer or feasible.  This is not a basis for dismissal at the pleading stage but rather involves a factual dispute that requires an evidentiary record.

Additionally, Hernandez's factual allegations are not conclusory.   Although the Fifth Circuit has not addressed in a published opinion how much detail and specificity is required to plead that a product was unreasonably dangerous due to a safer alternative design, it has issued two unpublished opinions undermining Safariland's arguments for dismissal.   *See Harrison v. Medtronic, Inc.*, No. 22-10201, 2022 WL 17443711 (5th Cir. Dec. 6, 2022); *Flagg v. Stryker Corp.*, 647 F. App'x 314 (5th Cir. 2016).   In *Flagg*, the Fifth Circuit emphasized that *Twombly* and *Iqbal* are "not a basis to shield product manufacturers from liability" and that a products-liability plaintiff should not be required to plead highly detailed facts "at a pre-discovery stage of this case, in an area of law where defendants are likely to exclusively possess the information relevant to making more detailed factual allegations."   647 F. App'x at 317–18.   The plaintiff in *Flagg* pleaded that he received toe implants manufactured by the defendant that broke within months of installation; that the shape and sizing of the implants caused their fracture; and that a different alloy other than the one used would have performed better.   *Id.*   The Fifth Circuit reasoned that these allegations provided sufficient information to raise a reasonable expectation that discovery would reveal evidence to support the defendant's liability.   *Id.* at 317.

In *Harrison*, a plaintiff sued the manufacturer of a pacemaker, alleging the company's pacemaker caused him to suffer cardiac arrest by firing a mistimed electrical pulse between heartbeats.   2022 WL 17443711, at *1.   The plaintiff alleged that the malfunction was caused by the pacemaker's loose battery or a corroded lead-connector.   *Id.*   Regarding the safer alternative design, the plaintiff alleged that the pacemaker's battery should have been secured by a clip or phalange to prevent power malfunctions and should have been made from a non-corrosive metal.   *Id.*   The district court deemed these allegations conclusory and insufficiently specific because the complaint did not include a "substantive evaluation" of the pacemaker's risks versus benefits not

9

specifically allege economic and technical feasibility and dismissed the design defect claim based on a failure to allege a safer alternative design. *Id.* at \*4. The Fifth Circuit disagreed and reversed, finding it was enough for the plaintiff at the pleading stage to specify alternative designs that he claimed were both safer and feasible, citing *Flagg*. *Id.*

Although these two Fifth Circuit cases are unpublished, they still provide some guidance to this Court as to the sufficiency of Hernandez's allegations regarding a safer alternative design. Hernandez has identified a basic alternative design to the holster that would cover the opening to trigger area and would not allow foreign objects to become lodged in the holster and to inadvertently discharge a firearm and has alleged feasibility. (First Am. Compl. [#4], at ¶¶ 7.02, 9.02.) The Court accepts these allegations as true for purposes of ruling on Safariland's motion to dismiss and finds them sufficient to plead a plausible claim of a design defect with a safer alternative design such that Hernandez should be entitled to proceed to discovery.

The primary case relied upon by Safariland in its motion is an unpublished district court case with no precedential value. *See Barragan v. Gen. Motors LLC*, No. SA-15-CV-854-DAE, 2016 WL 3519675, at \*4 (W.D. Tex. June 22, 2016). More importantly, its reasoning is unhelpful here because the case failed to reference *Flagg* and did not have the benefit of *Harrison*'s guidance. *See id.* The Court is not persuaded by the reasoning of this case. District courts evaluating the sufficiency of the pleadings on the element of safer alternative design are widely divergent in applying *Twombly* and *Iqbal* int his context. Moreover, the Fifth Circuit in *Harrison* cited a district court case with approval that embraced reasoning directly in conflict with *Barragan*. *See* 2022 WL 17443711, at \*4 n.4 (citing *Ardoin v. Stryker Corp.*, No. 4:18-CV-2192, 2019 WL 4933600 (S.D. Tex. Oct. 7, 2019)).

10

In *Ardoin*, the district court denied a manufacturer's motion to dismiss, finding the pleadings sufficient on the element of a safer alternative design because the plaintiff alleged that the components of an artificial hip system used in hip replacement surgeries could have been alternatively designed in a safer manner such that they did not contain discrepancies or metallurgical weaknesses. 2019 WL 4933600, at *3. The court emphasized that, although the safer alternative design allegations could have been more detailed, the pleading contained allegations regarding a theory of alternative design and its necessary elements, allegations which must be accepted as true at the motion to dismiss stage. *Id.* Numerous other district courts have ruled similarly. *See also Kaylor v. Eisai, Inc.*, No. 21-58, 2022 WL 983657, at *3–4 (W.D. La. 2022) (denying motion to dismiss defective design claim when petition did not provide "detailed blueprints of another design" but theorized that an alternative chemical composition would have reduced a drug's risk); *McMurdy v. Bos. Sci. Corp.*, No. 2:19-CV-00301-JRG, 2020 WL 6789349, at *3 (E.D. Tex. Aug. 28, 2020) (denying motion to dismiss where plaintiff alleged that product was defectively designed by using polypropylene and that a safer alternative design would be to not use polypropylene); *Reed v. C.R. Bard, Inc.*, No. 1:14-CV-359, 2015 WL 11110600, at *3 (E.D. Tex. Mar. 30, 2015) (accepting as true the plaintiff's allegations that an alternative design was safer and feasible for defective surgical mesh allegedly causing bowel obstruction and denying motion to dismiss).

In sum, Hernandez's factual allegations on her design defect claim, though minimal, sufficiently plead the elements of a safer alternative design. Accepting these allegations as true, the Court finds that Hernandez has pleaded a plausible theory of an unreasonably unsafe gun holster manufactured by Safariland, and Hernandez should be afforded the opportunity to test her theory in discovery.

**C.      Hernandez fails to plead plausible alternative claims based on a marketing defect.**

Hernandez alternatively pleads marketing-defect claims based on a theory that Safariland could have warned purchasers of the risk and ease with which foreign objects could enter the trigger guard and inadvertently discharge a duty weapon.  (Am. Compl. [#4], at ¶¶ 8.01, 9.05.) Safariland argues that the Court should dismiss Hernandez's strict-liability marketing-defect claim and her claim of negligence based on a failure to warn.  The Court agrees.

To prevail on a claim for marketing defect, a plaintiff must prove that (1) a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product, (2) the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed, (3) the product possessed a marketing defect, (4) the absence of the warning or instructions rendered the product unreasonably dangerous to the ultimate user of the product, and (5) the failure to warn or instruct constituted a causative nexus in the product user's injury.  *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 767 (W.D. Tex. 2020) (citing *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 411 (Tex. App.—Tyler 2008, no pet.)).  Under a marketing-defect theory, "it is the absence of an adequate warning or instructions that makes use of the product unreasonably dangerous."  *Emerson Elec. Co. v. Johnson*, 601 S.W.3d 813, 825 (Tex. App.—Fort Worth 2018, pet. granted), *aff'd*, 627 S.W.3d 197 (Tex. 2021).  "Sellers have no duty to warn of 'open and obvious' defects in strict products liability failure-to-warn claims."  *Id.* at 826 (citing *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995)).  "[I]n looking at whether the defendant owed a duty to warn, a court looks not at whether the risk would be obvious to an ordinary person or to the specific plaintiff, but at whether such risk would be obvious to an ordinary, foreseeable user of the product."  *Id.* (citing *Sauder Custom Fabrication Inc. v. Boyd*, 967 S.W.2d 349, 350–51 (Tex. 1998)).  "In sum, a defendant need not

warn either of (1) dangers that would be obvious to the ordinary user, as opposed to the ordinary person who may not be familiar with the product, or (2) dangers that are common knowledge in the community. The determination of whether a risk is obvious or commonly known is an objective standard." *Id.*

Although Safariland's motion primarily focuses on why it believes there was no duty to warn in this case, Safariland also argues that Hernandez's allegations are insufficient because nowhere in her Amended Complaint does she plead that the holster was adequately designed and that the failure to warn was the actual cause of the product's unreasonable unsafety. Courts have recognized that a products-liability plaintiff is permitted to plead theories of strict liability and negligence in the alternative. *See Waite v. Hill Servs., Inc., v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) ("A party is generally entitled to sue and seek damages on alternative theories . . . ."). However, to plead plausible alternative theories of liability, Hernandez must plead both that the holster was rendered unreasonable unsafe due to a design defect and articulate a plausible theory that the product was designed safely but rendered unsafe by the failure to warn. *See Timoschuk v. Daimler Trucks N. Am., LLC*, No. SA-12-CV-816-XR, 2014 WL 2592254, at *3 (W.D. Tex. June 10, 2014).

Nowhere in Hernandez's Amended Complaint does she allege that the holster was safe as designed yet the failure to warn caused the holster to be unreasonably dangerous. *See Emerson Elec. Co.*, 601 S.W.3d at 825–26 (emphasizing that to survive a 12(b)(6) motion to dismiss on marketing-defect claim, plaintiff must plead facts which allow the court to reasonably infer that "the absence of a warning and/or instructions renders the product unreasonably dangerous to the ultimate user or consumer of the product . . ."). Hernandez could have pleaded, for example, that the holster was defectively designed and alternatively it was safely designed to carry certain

13

weapons but that it was rendered unsafe by a failure to warn that the specific duty handgun used by SAPD officers was not compatible with the holster. No such allegations or other theory of a marketing defect is contained in Hernandez's Amended Complaint.

As noted, Hernandez does ask the Court for leave to amend her pleadings a second time in the event any claims are insufficiently pleaded. Although a plaintiff should typically be given one opportunity to amend the pleadings to save a claim from dismissal, amendment is not appropriate here, where Hernandez has already amended her pleadings and has attached a proposed Second Amended Complaint, which does not address this deficiency even after it was identified in Safariland's motion to dismiss. The proposed Second Amended Complaint does contain some additional factual allegations but still does not clearly articulate a plausible theory to support a marketing-defect claim. Hernandez pleads that there was no possible way for Hernandez to learn that the holster was not suitable to carry her service weapon because Safariland never issued a single warning about this defect despite having actual knowledge of previous events involving accidental discharge. (Second. Am. Compl. [#7-1], at 7.) Hernandez further pleads that Safariland has actual knowledge of the design defect of this holster as the same situation has occurred on at least two separate occasions: (1) a Fort Worth officer was shot in the leg when his zipper tag on his backpack entered the holster, pulled the trigger shooting him in the leg, and (2) on December 13, 2024, a school resource officer at Blanchard Elementary School in Oklahoma was passing out stickers to students on the playground when his gun discharged while still holstered because a child was able to get their finger(s) into the holster and pull the trigger. (*Id.* at 3.) Accepting these allegations as true, the Court still finds that they allege nothing more than a design defect based on a gap in the holster near the trigger of the weapon it contains. Nowhere in the Second Amended Complaint does Hernandez plead that a

14

specific type of weapon is incompatible with the holster; she consistently argues that the holster is defectively designed such that it is not acceptable for use by all users. Because the Court finds that Hernandez fails to plead a viable theory of a marketing defect, the Court need not and has not considered whether there was a duty to warn.

In sum, the pleading defects in Hernandez's First Amended Complaint are not saved by the proposed Second Amended Complaint, and the Court should dismiss Hernandez's marketing-defect claims.

**D.** **Hernandez fails to plead a plausible DTPA claim based on any theory.**

Plaintiff asserts a DTPA claim based on three theories: breach of warranty, unconscionability, and misrepresentation. (First Am. Compl. at ¶¶ 5.01–5.05.) Safariland argues Hernandez's DTPA claim based on all of these theories should be dismissed for failure to state a claim. For the reasons that follow, the Court will grant Safariland's motion to dismiss the DTPA claims.

**i.** **<u>Disclaimer of Warranties</u>**

The DTPA provides that "[a] consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: . . . breach of an express or implied warranty." *Nghiem v. Sajib*, 567 S.W.3d 718, 722 (Tex. 2019). Hernandez alleges that Safariland violated the DTPA by breaching an expressed and implied warranty that the holster was suitable for use by law enforcement and compatible with her duty weapon as set forth in writing and in its advertising for the holster. (First Am. Compl. [#4], at ¶ 5.03(1).) Safariland argues the DTPA claim based on a breach-of-warranty theory should be dismissed because Safariland disclaimed any implied warranties, and Plaintiff does not allege a breach of the sole express warranty.

"The Texas Uniform Commercial Code allows sellers to disclaim both the implied warranty of merchantability as well as the implied warranty of fitness for a particular purpose." *Womco, Inc. v. Navistar Int'l. Corp.*, 84 S.W.3d 272, 279 (Tex. App.—Tyler 2002, no pet.) (citing Tex. Bus. & Comm. Code § 2.316(b)).  The Supreme Court of Texas has held that a disclaimer of implied warranties is an affirmative defense.  *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 135 (Tex. 2014).  A party may assert an affirmative defense as a basis to dismiss a claim under Rule 12(b)(6) so long as the facts alleged in the pleadings, in combination with other facts subject to judicial notice or incorporation into the pleadings, establishes the application of the affirmative defense "on the face of the pleadings."  *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

Safariland attaches to its motion to dismiss its "Express Limited Warranty for Holster and Accessory Products" to establish that Hernandez's breach-of-warranty theory of a DTPA violation fails as a matter of law.  (Exhibit A-1 [#6-2], at 2.)  "Courts are generally limited to the complaint when ruling on a 12(b)(6) motion to dismiss, but documents attached to the motion to dismiss are considered part of the pleadings if they are (1) referenced in the complaint and (2) central to the plaintiff's claim."  *Mark on 287 Owner, LLC v. Croft, LLC*, 746 F. Supp. 3d 390, 397 (N.D. Tex. 2024) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).  Here, Hernandez specifically references "an expressed and implied warranty as set forth in writing and in its advertising for the Holster" in her live pleading, and the Warranty is central to her DTPA claim.  (First Am. Compl. [#4], at ¶ 5.03(1).)  Accordingly, this Court may consider it in evaluating the sufficiency of the pleadings.  *See Mark on 287 Owner*, 746 F. Supp. 3d at 397 (considering manufacturer's warranties attached to motion to dismiss where plaintiff quoted the warranties in her complaint and due to their centrality to the breach of warranty claim).

The Warranty clearly and conspicuously disclaims any implied warranty, stating: "THE COMPANY MAKES NO OTHER WARRANTIES EXPRESS, IMPLIED OR STATUTORY INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR MERCHANTABILITY." (Ex. A-1 [#6-2], at 2.)  To disclaim an implied warranty of merchantability, the disclaimer "must mention the word 'merchantability'" and, if the disclaimer is in writing, it "must be conspicuous." *Womco*, 84 S.W.3d at 279 (citing Tex. Bus. & Comm. Code § 2.316(b)).   To disclaim an implied warranty of fitness for a particular purpose, the "disclaimer must be in writing and must be conspicuous." *Id.*  Whether the disclaimer is "conspicuous" is a question of law.  Tex. Bus. & Comm. Code § 1.201(10).  A writing is conspicuous when "a reasonable person . . . ought to have noticed it." *Womco*, 84 S.W.3d at 279.  "[C]ourts have found that disclaimers in bold or capital letters, setting such disclaimer apart from the surrounding text, were sufficiently conspicuous to make the disclaimer valid." *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 853 (S.D. Tex. 2018); *see also Am. Eagle Ins. Co. v. United Techs. Corp.*, 51 F.3d 468, 469 (5th Cir. 1995).

Here, the disclaimer is both in writing and conspicuous, being set forth in a stand-alone paragraph and presented in capitalized font and specifically mentions the word "merchantability."   The Court therefore finds that Safariland has disclaimed any implied warranty and Plaintiff's claim for breach of an implied warranty must be dismissed. *See Mark on 287 Owner*, 746 F. Supp. 3d at 397–99 (dismissing claim for breach of implied warranty due to disclaimer and relying on warranty document referenced in complaint and attached to motion to dismiss).

Similarly, Plaintiff's claim for breach of express warranty must be dismissed.  An express warranty is also subject to reasonable limitations and disclaimers. *See* Tex. Bus. & Comm. Code

17

§ 2.316(a).  Hernandez alleges that Safariland expressly warranted in its advertising that the holster was suitable for use by law enforcement.  (Am. Compl. [#4], at ¶ 5.03(1).)  Yet, the Warranty makes clear that Safariland expressly warrantied only that the holster was "free from defects in materials and workmanship" for a period of two years from the date of purchase.  (Ex. A-1 [#6-2], at 2.)  To the extent that Hernandez is attempting to rely on some other purported implied or express warranty contained in marketing materials, Safariland made clear that: "This is a LIMITED WARRANTY, and is the sole and exclusive warranty of this product by the Company. . . . THE COMPANY MAKES NO OTHER WARRANTIES EXPRESS, IMPLIED, OR STATUTORY . . . ."  (*Id.*)  The Second Amended Complaint contains specific references to statements on Safariland's website about the holster being "the most common model for patrol and general duty use."  (Second Am. Compl. [#7-1], at 6.)  Any additional warranty construed from Safariland's website is disclaimed by the Limited Express Warranty before the Court.

In sum, Safariland argues that the Limited Express Warranty is before the Court, referenced in the pleadings, and unmistakably sets forth that no other warranty exists, which is fatal to Hernandez's breach-of-warranty theory of a DTPA violation.  The Court agrees. Allowing amendment as to this claim is not appropriate either where Hernandez's proposed Second Amended Complaint reiterates the same allegations regarding breach of warranty and does not overcome Safariland's affirmative defense of disclaimer of warranties.

### ii.    Unconscionability

Hernandez separately alleges that Safariland violated the DTPA by committing an unconscionable act by holding itself out to the public to be a manufacturer of safe products for law enforcement.  (Am. Compl. [#4], at ¶ 5.03(2).)  Safariland contends that the unconscionability claim should be dismissed because Plaintiff does not adequately allege an

18

unconscionable act, but rather the facts alleged only amount to a breach of warranty claim. The Court agrees with Safariland.

"The DTPA defines an unconscionable action as 'an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.'" *Kumar v. Panera Bread Co.*, 750 F. Supp. 3d 785, 792 (S.D. Tex. 2024) (quoting Tex. Bus. & Comm. Code § 17.45(5)). To be actionable under this section of the DTPA, "the resulting unfairness must be "glaringly noticeable, flagrant, complete and unmitigated." *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex. 1998) (internal quotation omitted). To plead a DTPA claim based on unconscionable conduct, there must be more than an allegation of a breach of warranty or contract or false advertising. *See Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (affirming dismissal of DTPA claim based on unconscionability where plaintiff alleged no more than a repackaged claim for breach of contract); *Bedgood v. Nissan N. Am., Inc.*, No. A-16-CA-00281-SS, 2016 WL 3566689, at *4 (W.D. Tex. June 24, 2016) (dismissing DTPA claim that was based on nothing more than allegation that defendant had breached its contract by falsely advertising its alarm system would work when, in fact, it did not work as promised under the contract). Hernandez fails to allege any conduct taking advantage of consumers to a grossly unfair degree. She merely alleges that Safariland held itself out to the public as a manufacturer of safe products and that Hernandez had no way of determining that the holster was defectively designed and not suitable for her weapon. (Am. Compl. [#4], at ¶ 5.03(2).) This is merely a repackaged false advertising/marketing defect or breach of warranty claim.

Hernandez claims in response that Safariland's conduct was grossly unfair and unconscionable because Safariland was aware of the risk its design created based on another

lawsuit stemming from a foreign object entering the holster of a Fort Worth police officer resulting in a gunshot to the leg yet chose to do nothing to recall the product or issue warnings. These facts are not contained in Hernandez's First Amended Complaint. However, even if the Court considers the additional allegations contained in the proposed Second Amended Complaint discussed *supra* regarding other incidents of accidental discharge and the holster, Hernandez has not stated a plausible DTPA violation based on an unconscionable act by Safariland. Still, in the proposed Second Amended Complaint, she pleads nothing more than that the holster did not function as advertised and warranted and that there was a duty to warn of possible accidental discharge, which is essentially a repackaged marketing defect claim. Hernandez fails to plead sufficient facts to state a plausible claim that Safariland engaged in additional unconscionable conduct actionable under the DTPA.

### iii.    <u>Misrepresentation</u>

Hernandez pleads that Safariland violated the DTPA by making certain misrepresentations about the holster: that it was fit for use with duty weapons for police officers and was of a particular standard, quality or grade, when it was not. (Am. Compl. [#4], at ¶ 5.03(3), (4).) Safariland argues that the misrepresentation claims should be dismissed because the allegations in the live pleading disprove detrimental reliance and because the allegations do not comport with the heightened pleading requirement of Rule 9(b).

To succeed on a DTPA claim based on a false, misleading, or deceptive act or practice, a plaintiff must prove that she relied on the alleged misrepresentations to her detriment. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) (citing Tex. Bus. & Comm. Code § 17.50(a)(1)(B).) Safariland asserts that Hernandez cannot plausibly allege detrimental reliance

20

on any misrepresentation by Safariland because she alleges that her employer, SAPD, purchased the holster and issued it to her.  (Am. Compl. [#4], at ¶¶ 4.01, 5.01.)  The Court agrees.

Courts have repeatedly held that where the alleged misrepresentations were made to a third party, not the plaintiff, there can be no detrimental reliance by the plaintiff, as "[a] party cannot detrimentally rely on statements they do not know about."  *See, e.g.*, *CrewFacilities.com, LLC v. Humano, LLC*, No. 1:23-CV-909-RP, 2024 WL 993898, at *3 (W.D. Tex. Mar. 7, 2024).  The case cited by Hernandez in her attempt to establish the contrary is inapposite, as it merely establishes that a third-party beneficiary of a contract may qualify as a consumer under the DTPA.  *See Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 643–44 (W.D. Tex. 2013) ("A third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was . . . intended to benefit the third party and the goods or service was rendered to benefit the third party.")  The court in *Kersh* did find that the plaintiff had stated a claim under the DTPA based on misrepresentations, but the allegations were that the plaintiff (a third-party beneficiary of the contract) had herself relied on the misrepresentations.  No similar allegations exist in the First Amended Complaint or proposed Second Amended Complaint.  As the Court finds that Hernandez fails to plead detrimental reliance on a misrepresentation made to her by Safariland, the Court need not also consider whether Hernandez's allegations satisfy the heightened pleading standard set forth in Rule 9(b).

## E.    Gross Negligence

Finally, Safariland asks the Court to dismiss Hernandez's claim for gross negligence. The only argument for dismissal of this claim advanced in Safariland's motion is that the claim must be dismissed where all negligence claims have also been dismissed, as an underlying negligence claim is a prerequisite to a claim for gross negligence.  Because the Court has

determined that Hernandez's design-defect claims should survive Safariland's motion, the Court will deny the motion to dismiss as to the claim of gross negligence based on that same theory. Based on the foregoing,

IT IS HEREBY ORDERED that Defendant Safariland, LLC's Motion to Dismiss Plaintiff's First Amended Complaint [#6] is **GRANTED IN PART AND DENIED IN PART**. The Court hereby dismisses Hernandez's claims based on a manufacturing defect and her DTPA claims. Hernandez's claims based on a design defect, premised on a theory of ordinary negligence, strict liability, or gross negligence, shall proceed to discovery.

IT IS FURTHER ORDERED that Hernandez's request for leave to file a Second Amended Complaint, which is contained within her response to Safariland's motion, is **DENIED**. The live pleading remains the Amended Complaint filed on February 13, 2025 [#4].

SIGNED this 29th day of January, 2026.


ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

22